**Richmond**

DAN RIVER, INC.

v.

ANNE M. ADKINS

No. 0827-85

Decided October 21, 1986

COUNSEL

James A. Harper, Jr.; Michael P. Regan (Michael H. Corley; Hunton & Williams, on briefs), for appellant.

Leonard T. Jernigan, Jr. (Phillip Sasser, Jr.; Jarrell, Hicks & Sasser, on brief), for appellee.

OPINION

**KEENAN, J.** — Dan River, Inc. appeals from a decision of the Industrial Commission finding that Anne M. Adkins is permanently disabled by irreversible, third-stage byssinosis. Dan River contends: (1) that Adkins' claim is time-barred; (2) that the Commission's appointment of an independent expert under Code § 65.1-90 violated the Commission's own rules and deprived Dan River of due process; and (3) that no credible evidence supports the finding of byssinosis. We hold that Adkins' claim is time-barred and reverse the Commission's decision.

## I.

Adkins worked in Dan River's textile manufacturing establishment, with several interruptions in time, from the late 1920's to 1976. She retired on May 28, 1976. Adkins filed a claim with the Commission on May 24, 1983. At the time of Adkins' retirement, the worker's compensation statute provided in pertinent part:

> The right to compensation [for occupational disease] shall be forever barred unless a claim be filed with the Industrial Commission within three years for coal worker's pneumoconiosis and two years for all other occupational diseases after a diagnosis of an occupational disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs.

Code § 65.1-52 (1980 Repl. vol.). In 1982, the General Assembly amended this provision to read in pertinent part as follows:

> The right to compensation [for occupational disease] shall be forever barred unless a claim be filed with the Industrial Commission within one of the following time periods:
> * * * *
> 2. For byssinosis, two years after a diagnosis of the disease is first communicated to the employee or within seven years

from the date of the last injurious exposure in employment, whichever first occurs.

1982 Va. Acts c. 82 (codified at Code § 65.1-52 (1980 Repl. vol. & Cum. Supp. 1986)).

The deputy commissioner adversely decided the merits of Adkins' claim. In addition, the deputy commissioner concluded that although Adkins filed her claim within two years after a diagnosis was communicated to her, the claim was untimely because the five-year period in former Code § 65.1-52 expired on May 28, 1981, before the legislature extended the period to seven years.

A majority of the Commission found, as did the deputy commissioner, that Adkins received a diagnosis of byssinosis on May 17, 1983.[1] Using the date of her retirement as the date of her "last injurious exposure" as provided by the statute, *Owens v. Buchanan County Coal Co.*, 54 O.I.C. 299 (1972), the Commission found that Adkins had filed her claim within the seven-year period of the amended Code § 65.1-52. In holding that the seven-year period applied, the Commission stated:

> [T]he law in effect at the time of the accident is controlling in this case, and . . . under § 65.1-49, the date of communication of occupational disease to the employee is the date of "happening of an injury by accident." The Commission has so held in prior cases including *Crenshaw v. Newport News Shipbuilding & Drydock Co.*, 57 OIC 83 (1977).

Thus, the Commission concluded that Adkins filed her claim within the time allowed from the date of her "accident," seven years.

Chairman James, in a dissenting opinion, concluded that Adkins' claim was barred when the five-year period in former Code § 65.1-52 expired. He stated that Dan River then acquired a "vested right" in the limitations bar and the General Assembly subsequently could not revive Adkins' "dead claim." As authority for this position, Chairman James cited, *inter alia, Parris v.*

---

[1] The diagnosis was actually communicated to Adkins on May 16. Dan River contends that Adkins did not prove that the diagnosis was communicated to her on this date; however, Adkins testified that Dr. Hayes informed her of his diagnosis on the date of her examination, May 16, 1983.

*Appalachian Power Company* (I.C. Claim No. 637-202). Dan River reiterates the "vested right" position of Chairman James' dissenting opinion and urges us to find *Parris* dispositive of the issue.

## II.

In order to determine whether Adkins' claim was timely filed, we must decide whether to apply the limitation period of Code § 65.1-52 as it existed five years after the date of her last injurious exposure, or the limitation period in effect on the date that she first received communication of the diagnosis.

In deciding to apply the limitation period in effect on the date Adkins first received communication of a diagnosos of byssinosis, the Commission did not address the issue whether Dan River acquired a vested right in the five-year limitation period of former Code § 65.1-52. That limitations period was in effect on May 28, 1976, the date of Adkins' last injurious exposure in employment. It remained in effect on May 28, 1981, five years later.

 Former Code § 65.1-52 established a two-prong limitation covering byssinosis claims. Worded in the disjunctive, it provided that upon the occurrence of *either* event (two years after first communication of a diagnosis or five years from the date of last injurious exposure in employment), the employee's right to compensation for an occupational disease was forever barred. Each prong described a distinct event, measured from a different point in time. The occurrence of one event immediately triggered the statutory bar. Once a claim was barred, the employer acquired a vested right. In *Kesterson v. Hill*, 101 Va. 739, 45 S.E. 288 (1903), the Supreme Court stated:

> [I]t has been held that the right to set up the bar of a statute of limitations as a defense to a cause of action after the statute has run is a vested right, and cannot be taken away by legislation, either by a repeal of the statute without saving clause, or by an affirmative act; and that it is immaterial whether the action is for the recovery of real or personal property, or for the recovery of a money demand, or for the recovery of damages for a tort.

*Id.* at 743-44, 45 S.E. at 289; *see also Hupman v. Cook*, 640 F.2d 497 (4th Cir. 1981); *Nicholas v. Lynchburg Training School & Hospital*, 44 O.I.C. 198, 200 (1962).

After the oral argument in Adkins' case, this Court affirmed the Commission's decision in *Parris v. Appalachian Power Co.*, 2 Va. App. 219, 343 S.E.2d 455 (1986), concluding that an employee who had not filed a claim within the five-year limitation period of former Code § 65.1-52 could not receive the benefit of the later amendment.[2] The court held that the employer acquired a vested right in the running of the five-year limitation period. *Id.* at 228, 343 S.E.2d at 460.

In *Parris*, the date of the employee's last injurious occupational exposure was October 22, 1975. In June 1981, he received a diagnosis of asbestosis. He filed his first claim in August 1981. In holding that the statute of limitations expired before Parris filed his claim, the court stated: "The running of the statute, standing alone, is a bar to subsequent claims. This is true even though the limitations period was subsequently amended." 2 Va. App. at 229, 343 S.E.2d at 460.

The court in *Parris* also acknowledged: "We note, however, that an amendment to a period of limitation that enlarges the period is generally applicable to existing causes of action provided that an action already barred is not revived." *Id.* at 229, 343 S.E.2d at 461.

We find the holding in *Parris* to be persuasive authority in the determination of Adkins' claim. In applying the *Kesterson* analysis to a workers' compensation claim, *Parris* recognized that once a single prong of the limitation period is fulfilled, the employee's claim expires and the employer acquires a vested right in its expiration.

---

[2] In *Parris*, the employee's claim alleged occupation-related asbestosis. He sought benefit of the 1983 amendment to Code § 65.1-52, which removed the five-year limitation period for asbestosis and requires only the filing of a claim within two years after a diagnosis of asbestosis is first communicated to the employee. Prior to July 1, 1983, Code § 65.1-52 provided the same lmitations period for asbestosis as the pre-1982 language of that section allowed for byssinosis. Therefore, although *Parris* involved a different occupational disease, the statutory language interpreted by the court was the same as in the case before us.

In *Buenson Division Aeronca, Inc. v. McCauley*, 221 Va. 430, 270 S.E.2d 734 (1980), the Supreme Court emphasized the significance of a vested right in determining what limitations period is applicable to a given claim. In *Buenson*, the employee sustained an injury in January 1977. At that time, Code § 65.1-99 placed a twelve month limitation period on the filing of an application for review based upon a change in condition. This twelve-month period was measured from the last day for which compensation was paid pursuant to an award. Code § 65.1-99 was amended, effective July 1977. The amendment enlarged the limitations period to twenty-four months. The employee filed an application for a change in condition nineteen months after the last day for which compensation was paid. The Commission held that amended Code § 65.1-99 applied and allowed the claim. The Supreme Court affirmed the Commission's decision and stated: "Persuasive here is the fact that the new limitation period became effective before the old limitation would have barred McCauley's claim." 221 Va. at 434, 270 S.E.2d at 736. The court then distinguished that situation from a petition for appeal it refused in *Biller v. ARA-Va. Skyline Co.*, 219 Va. liii (1978). In *Biller*, the employee was last paid compensation for June 28, 1976. On December 6, 1977, he filed an application for review based upon a change of condition. The Commission denied the application based on timeliness.[3] The Supreme Court contrasted the facts of *Biller* with the facts before it in *Buenson*:

> Unlike the situation here, however, Biller's claim was barred by the old limitation before the enlarged restriction became effective. To have given retroactive effect to the amendment there would have resulted in the revival of a dead claim.

*Buenson*, 221 Va. at 434 n.2, 270 S.E.2d at 736 n.2. Applying this principle, we find that to allow Adkins' claim based on amended Code § 65.1-52 would result in the revival of a dead claim.

---

[3] We note that in *Biller*, the employee was not seeking compensation as a result of an occupational disease. Therefore, in determining which limitations period applied, the Supreme Court needed only to consider the date of injury in determining whether a vested right had accrued, based on the statute of limitations in effect on that date. The court was not required, as we are here, to apply the two-prong provision of former Code § 65.1-52 in determining whether a vested right had accrued.

In finding that Adkins' claim had not expired, the Commission relied on Code § 65.1-49 and its holding in *Crenshaw v. Newport News Shipbuilding & Drydock Co.*, 57 OIC 83 (1977). It reasoned that because § 65.1-49 assigns the date of first communication of the diagnosis of an occupational disease as the date of "happening of an injury by accident," this became the "injury date" for purposes of determining which limitations period applies to Adkins' claim.

■ Although Code § 65.1-49 was designed to place occupational diseases within the general structural and definitional framework of the Workers' Compensation Act, we cannot find that it operates to fix the applicable limitations period where the specific statute setting forth the limitations period indicates a different legislative intent.

As stated above, both versions of Code § 65.1-52 establish a two-prong limitation period. One prong runs prospectively from the date of last injurious exposure in employment. The second prong runs prospectively from the date that the diagnosis of an occupational disease is first communicated. Thus, it is clear that the legislature intended that a different date fix the starting point of each of the two prongs. Both prongs contain an implicit recognition of the unique circumstances involved in making a claim for an occupational disease. In contrast, the purpose of Code § 65.1-49 is to place occupational diseases within the general operating framework of the Workers' Compensation Act by creating a date of "injury." Without this statutory link, parallel provisions dealing with occupational disease would have to be enacted that would merely duplicate existing provisions of the Act pertaining to injury by accident. Therefore, we conclude that the creation of an "injury" date in Code § 65.1-49 was not intended to limit or otherwise affect the unambiguous provisions of Code § 65.1-52. Those provisions contain fixed starting points and must be applied as they are plainly worded.

Adkins' last injurious exposure in employment was May 28, 1976. At that time, former Code § 65.1-52 allowed her to file her claim either five years from this date or two years from May 16, 1983 (the date of first communication of a diagnosis of byssinosis), *whichever occurred first*. The five-year period expired first. This occurred on May 28, 1981. After that date, by operation of former Code § 65.1-52, Adkins' claim was barred. The amend-

ment to § 65.1-52 did not take effect until July 1982. It could not operate to extend a claim that was barred. *Parris*, 2 Va. App. at 229, 343 S.E.2d at 460. To hold otherwise would negate the vested right which Dan River acquired on May 28, 1981, when the limitation period then in effect expired.

We recognize that our interpretation of Code § 65.1-52 may result in an individual losing a cause of action for an occupational disease before he is first told he has the disease. This potential for inequity, however, is inherent in the two-prong nature of the statute. To eliminate any inequity, legislative action would be required. The legislature, in its 1982 amendment to Code § 65.1-52, partially acknowledged this problem by extending one prong of the time limit in byssinosis cases from five to seven years. While this does not eliminate the above-stated problem, it does evince a legislative intent to address the problem from *within* Code § 65.1-52, rather than by application of Code § 65.1-49 or any other section of the Act.

■ We also note that in the special context created by the Workers' Compensation Act, this problem cannot be resolved by a liberal construction of the statute. As stated by the Supreme Court in *Winston v. City of Richmond*, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954):

> The right to compensation under the workmen's compensation law is granted by statute, and in giving the right the legislature had full power to prescribe the time and manner of its exercise. When the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them. The province of construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation.

The limitation period of Code § 65.1-52 is part of the substantive right of recovery created by the Act. *Barksdale v. H.O. Engen, Inc.*, 218 Va. 496, 499, 237 S.E.2d 794, 796 (1977). Absent clear language to the contrary, this statute cannot be construed in derogation of another substantive right, namely, the vested right acquired by Dan River on May 29, 1981, when the five-year limitation period on Adkins' cause of action expired. Ac-

cordingly, we find that the Commission erred in applying the seven-year limitation period of amended Code § 65.1-52, and that Adkins' claim was time-barred after May 28, 1981, by the five-year limitation period in effect on that date.

*Reversed and dismissed.*

Cole, J., concurred.

Benton, J., dissenting.

I believe the Commission correctly determined that the statute in effect at the time that Adkins first received communication of a diagnosis of byssinosis governs this case. I would hold, therefore, that Adkins' claim was timely, and I would affirm the award of compensation.

*In civil actions* in Virginia, a party obtains a vested right in the protection afforded by a statute of limitations that has expired. When the limitations period runs without institution of suit, the legislature cannot disturb the right to rely upon the statutory bar. *Kesterson's Administrator v. Hill*, 101 Va. 739, 743-44, 45 S.E. 288, 289-90 (1903).[1] General statutes of limitations that govern civil claims are designed to require prompt assertion of claims. *See Locke v. Johns-Manville Corp.*, 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981). Generally, *in civil actions* the limitations provision regulates the availability of the remedy, which arises from a separate body of law. *See* 53 C.J.S. *Limitations of Actions* §6(b) (1948).

Limitations measures occupy a somewhat different place in the workers' compensation statute, which creates purely statutory rights and obligations of employees and employers. *See Barksdale v. H.O. Engen, Inc.*, 218 Va. 496, 498, 237 S.E.2d 794, 796 (1977); *Winston v. City of Richmond* 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954). "[C]ompensation acts are *sui generis*, and the rights and liabilities created thereunder are to be given full force and effect according to their own unique status, although they may not fit into the time worn grooves of other areas

---

[1] The Virginia rule with respect to civil actions is not required as a matter of federal constitutional law. *See Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 315-16 (1945) (retroactive legislation to "[lift] the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is [not] *per se* an offense against the Fourteenth Amendment"); *Campbell v. Holt*, 115 U.S. 620, 628-29 (1885).

of the law." *Todeva v. Oliver Iron Mining Co.*, 232 Minn. 422, 428, 45 N.W.2d 782, 787-88 (1951). Unlike their analogues in the civil law, limitations provisions in Virginia's workers' compensation statute, such as the measures in Code § 65.1-52, are part of the right as well as the remedy. In *Barksdale* the Supreme Court stated:

> [The claimant] argues that the limitation period in issue is more akin to the procedural statute of limitations in a common law tort action than to a wholly new statutory right of action. We do not agree. The right to recover under the Workmen's Compensation Act, which is not based on negligence and is not barred by common law tort defenses of contributory negligence, negligence of a fellow servant, or assumption of risk, is a purely statutory right unknown at common law. The statute created a new right of action for the benefit of an employee or his dependents for work-related personal injuries or death without regard to the employee's negligence.
>
> We have long recognized that there is a marked distinction between a pure statute of limitations and a special limitation prescribed by a statute creating a new right. The special limitation is part of the right as well as the remedy, an integral part of the statute, and a condition precedent to maintenance of the claim. As we said in *Winston v. City of Richmond, supra*, 196 Va. at 407, 83 S.E.2d at 731, "[t]he right to compensation under the workmen's compensation law is granted by statute, and in giving the right the legislature had full power to prescribe the time and manner of its exercise." Thus the limitation is a part of the new substantive right.

*Barksdale*, 218 Va. at 498-99, 237 S.E.2d at 796 (citations omitted).

The legislature can add a limitations provision to a basis for compensation where none existed previously, *see Allen v. Mottley Construction Co.*, 160 Va. 875, 170 S.E. 412 (1933); lengthen a limitations period, *see Buenson Division, Aeronca, Inc. v. Mc-Cauley*, 221 Va. 430, 270 S.E.2d 734 (1980); or even do away with a limitations provision with regard to a particular type of claim. *See* 1983 Va. Acts c. 469; *Miller v. E.I. DuPont De*

*Nemours & Co.*, 62 O.I.C. 322 (1983). In each such case the legislature did more than merely fix a time period (or absence of such period) in which an employee must pursue her remedy under the workers' compensation statute; it changed in a significant way her *right* to compensation. I believe this aspect of limitations provisions in the workers' compensation statute should control the decision in this case.

A majority of the Commission took the view that the applicable limitations period was determined as of the date that Adkins received a diagnosis of byssinosis. The Commission's position is consistent with the workers' compensation statute which provides:

> When the employer and employee are subject to the provisions of this Act, first communication of the diagnosis of an occupational disease to the employee . . . shall be treated as the happening of an injury by accident . . . and the employee . . . shall be entitled to compensation as provided by the Act.

Code § 65.1-49. Dan River assails the Commission's reliance upon § 65.1-49, which it characterizes as "a constructive, and artificial 'date of injury' *for administrative purposes* in accommodating an occupational disease coverage into an act structured for compensating victims of injury by accident." (emphasis added). Dan River maintains that Adkins' "cause of action" arose during her injurious exposure, before a diagnosis that would transform it into a "right of action" for compensation, and that the expiration of the five-year period in old § 65.1-52 barred forever her *right* to compensation. I believe that Dan River's position, which the majority opinion adopts, is unsupported by precedent and misperceives the nature of the workers' compensation statute.

The date an employee receives a diagnosis of occupational disease is not simply an administrative device in the workers' compensation statute. It is instead a fundamental element in the scheme of rights and duties that exist under the statute. For example, in Code § 65.1-45 the legislature expressed an intention that employers and their employees voluntarily resolve cases of work-related disability. Accordingly, a disabled employee must give written notice to her employer within certain legislatively prescribed time limits. *See* Code § 65.1-51 (within 60 days after di-

agnosis of disease); Code § 65.1-85 (within 30 days after an industrial accident). In Code § 65.1-49 the legislature fixed a definite point at which *both* the employer and employee can determine whether the employee's disability resulted from an occupational disease entitling her to benefits. *See Bray v. Dynatech Corp.*, 60 O.I.C. 57, 59 (1981). Code § 65.1-49 also provides a fixed point at which an employer's duty to furnish medical care can be determined. *See* Code § 65.1-49;[2] *Davis v. Armstrong Cork Co.*, 49 O.I.C. 86, 88 (1967). Significantly, an employee can lose the right to compensation even if her claim is filed within the pertinent limitation period if she fails to give the written notice required by Code § 65.1-51 and the failure prejudices her employer's rights. *Lewis v. Lynchburg Foundry Co.*, 204 Va. 303, 307, 130 S.E.2d 429, 432 (1963).

Code § 65.1-49, in conjunction with Code § 65.1-50,[3] further serves the substantive function of identifying *which* employer is liable for disability due to occupational disease. The Supreme Court explained this function as follows:

On a claim based upon an accident, the employer on the date of the accident is the employer liable, and that date determines the applicable *notice* equirements, statute of limitations, and rate of compensation. In a claim based upon a disease, the date of the accident (fixed by the statute as the date of the "first communication of the diagnosis") plays a similar, but not an identical, role. Standing alone, it does not identify the employer liable on the claim; it is "otherwise provided" in Code § 65.1-50 which adds another criterion. Under that section, the employer on the date of the accident

---

[2] Code § 65.1-49 provides in part:

An employee who has an occupatioal disease that is covered by this Act shall be entitled to the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident, except that the period during which the employer shall be required to furnish medical attention shall begin as of the date of first communication of the diagnosis of the occupational disease to the employee.

[3] Code § 65.1-50 provides in part:

When an employee has an occupational disease that is covered by this Act, the employer in whose employment he was last injuriously exposed to the hazards of the disease and the employer's insurance carrier, if any, at the time of the exposure, shall *alone* be liable therefor, without right to contribution from any prior employer or insurance carrier (emphasis added).

may be the employer liable but only if he is also "the employer in whose employment [claimant] was last injuriously exposed to the hazards of the disease."

*Cooper v. Mary E. Coal Corp.*, 215 Va. 806, 809, 214 S.E.2d 162, 164-65 (1975). *See generally* Vokoun, *Using the Last Exposure Rule in the Determination of Liability of Employers and Insurers for Occupational Diseases*, 20 Forum 102 (1984). It is of no consequence that Adkins suffered injurious exposure only in Dan River's employment; the signal importance of the date a diagnosis is communicated to an employee remains clear. By the plain terms of the workers' compensation statute, Adkins was not entitled to compensation or medical care, and Dan River was not liable for the benefits, until she received the diagnosis of byssinosis on May 16, 1983. On that date, Code § 65.1-52, as amended, applied to all diagnoses of byssinosis first communicated to claimants after the effective date of the amendment, July 1982, and provided for the filing of a claim within seven years after the date of last injurious exposure. Adkins filed her claim with the Commission on May 24, 1983, within the statutory period. I believe, therefore, that her claim was timely and that the time limit in effect at the date of communication of the diagnosis of injury was a part of Adkins' right to recover. *See Barksdale*, 218 Va. at 496, 237 S.E.2d at 796.

In my opinion, the majority's application of the statute in effect at the time of Adkins' last injurious exposure is contrary to the scheme of the Workers' Compensation Act. Moreover, I find no Supreme Court case which suggests that the law in effect at the time of the last injurious exposure governs the filing of a claim. The result reached by another panel of this Court in *Parris v. Appalachian Power Co.*, 2 Va. App. 219, 343 S.E.2d 455 (1986) is not inconsistent with a determination in this appeal that Adkins' claim was timely. In *Parris*, the employee received a diagnosis of occupational disease (in June 1981) *before* the effective date (July 1, 1982) of the amendment to § 65.1-52. 2 Va. App. at 220-21, 343 S.E.2d at 456. Furthermore, the reference in *Parris* to the date of last injurious exposure was germane only to the time the statute of limitation began to run, not to the question of which statute of limitations was to be applied. I believe that Parris' claim properly was barred because it was filed more than five years, *the limitations period in effect on the date of diagnosis*,

from Parris' last injurious exposure. *Id.*

The majority opinion also cites in support of its position the Supreme Court's refusal of a petition in *Biller v. ARA-Va. Skyline Co.,* 219 Va. liii (1978). It should be noted, however, that in *Biller* the Commission held that the claim was controlled by the twelve-month limitation *in effect on the date of Biller's injury.* That was the basis of the decision from which the Supreme Court refused a petition for appeal. *See Biller v. ARA-Va. Skyline Co.,* Claim No. 494-062 (unpublished opinion of the Commission, February 14, 1978). *Biller* is therefore in derogation of the majority's position and is more appropriately cited in support of the Commission's decision here.

It appears that the majority believes that the application of Code § 65.1-52, as amended, would constitute an impermissible retroactive application of a statute resulting in the impairment of a vested right which Dan River acquired. I believe that this case does not involve the retroactive application of the statute as amended or the impairment of vested rights.

In Virginia an employee cannot assert a claim for compensation in occupational disease cases until there has been a communication of the diagnosis of an occupational disease. The communication of the diagnosis is treated as the "happening of an injury by accident." Code § 65.1-49. *See generally Kiser v. Clinchfield Coal Co.,* 225 Va. 357, 302 S.E.2d 44 (1983); *Cook v. Clinchfield Coal Co.,* 215 Va. 599, 212 S.E.2d 263 (1975); *Anderson v. Clinchfield Coal Co.,* 214 Va. 674, 204 S.E.2d 257 (1974); *Blue Diamond Coal Co. v. Pannell,* 203 Va. 49, 122 S.E.2d 666 (1961). Until there has been a diagnosis of occupational disease the claimant has no claim for benefits and the employer is exposed to no liability. Thus, applying the law in effect at the time of the communication of diagnosis of an occupational disease (the "happening of an injury by accident") to a claim arising from that disability does not involve a retroactive application of the statute and does not impair any vested rights. *See Wood v. J.P. Stevens & Co.,* 297 N.C. 636, 256 S.E.2d 692 (1979); *Dickow v. Workmen's Compensation Appeals Board,* 34 Cal. App. 3d 762, 109 Cal. Rptr. 317 (1973); *McCann v. Walsh Construction Co.,* 282 App. Div. 444, 123 N.Y.S.2d 509 (1953), *aff'd,* 306 N.Y. 904, 119 N.E.2d 596 (1954).

A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; rather, a law is retroactive only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage. In cases such as the present, the right to compensation does not accrue and the rights of the parties do not become fixed until the occurrence of the event, in this case appellant's disability, which gives rise to a cause of action. Consequently, application of the law in effect at the time the disability occurred to a claim arising from that disability does not involve a retroactive application of the law.

*Frisbie v. Sunshine Mining Co.*, 93 Idaho 169, 457 P.2d 408, 411 (1969) (citations omitted).

Dan River had no vested right in the limitations period in effect on the date of Adkins' last injurious exposure; Dan River's rights became fixed on May 16, 1983, the date of the communication of the diagnosis to Adkins. It was only then that Adkins' disability was established and she had a cause of action. In *Buenson*, upon which the majority opinion relies, the issue before the court was whether to retrospectively apply an amendment extending the statute of limitation *to an injury claim that arose prior to the effective date of the statute.* In making the decision to apply the statute retrospectively, the court was persuaded by the fact that the new limitation became effective before the old limitation period barred the claimant's claim. I believe that fact was important precisely because the court was concerned whether vested rights would be impaired by the *retroactive* application of the statute. Unlike *Buenson*, the situation before us does not involve the retroactive application of the statute. Because Code § 65.1-52 was amended prior to the date of the diagnosis of byssinosis, the issue before us is whether to apply the statute in effect at the time of the diagnosis of disease.

The effect of increasing the limitations period from five years to seven years following the last injurious exposure was to give the right of action to Adkins and to each claimant who received a diagnosis of occupational disease subsequent to the amendment of the statute. The limitation, or condition on filing a claim, must be determined at the time the cause of action accrues, which is the

date of diagnosis of the disease. Adkins could not have first initiated and maintained a claim to a successful conclusion until a diagnosis of byssinosis was communicated to her. Thus, her right to initiate a claim first accrued on May 16, 1983. Since Adkins had no right of action prior to May 16, 1983, Dan River obtained no vested right. On May 16, 1983, the statute then in effect only barred claims filed more than seven years from the date of the last injurious exposure.

For these reasons I believe that Adkins' claim was timely. Furthermore, I believe that there is credible evidence in the record to support the award of the Commission.